## CRANE v. UNITED STATES. *

(Circuit Court of Appeals, Ninth Circuit. July 7, 1919.)

### No. 3255.

1. POST OFFICE ⊚═48(4)—OFFENSE—INDICTMENT.

An indictment, charging that defendant devised a scheme and artifice to defraud, and used the mails in carrying out the scheme, which consisted of representations of supernatural powers, *held* sufficient to charge an offense.

2. INDICTMENT AND INFORMATION ⊚═121(2)—BILL OF PARTICULARS.

An indictment, charging that defendant devised a scheme and artifice to defraud, and used the mails in connection therewith, *held* to plainly and fairly give defendant information of what he must be prepared to meet, and so he was not entitled to a bill of particulars.

3. POST OFFICE ⊚═49—OFFENSE—EVIDENCE—SUFFICIENCY.

In prosecution for devising a scheme and artifice to defraud and using the mails in connection therewith, which scheme consisted of representations by defendant that he was gifted with supernatural powers, evidence *held* sufficient to sustain a conviction.

4. CRIMINAL LAW ⊚═789(9)—INSTRUCTION—REASONABLE DOUBT.

Where the jury was charged that defendant must be proven guilty beyond a reasonable doubt, and that reasonable doubt is such as leaves the minds of the jurors in that condition that they cannot feel an abiding conviction to a moral certainty of defendant's guilt, it was not error to further charge that the prosecution was not called upon to make the case free from any possible doubt by proving defendant's guilt to an unassailable demonstration.

5. CRIMINAL LAW ⊚═829(9)—INSTRUCTION—REFUSAL OF REQUEST.

Where the instructions charged that the presumption of innocence, that finding of the indictment was not proof of guilt, and that suspicion or probability of guilt would not justify conviction, the refusal of a requested instruction that the jury could not convict because defendant had been arrested on the charge preferred was not error.

In Error to the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

Arthur Crane was convicted of devising a scheme and artifice to defraud and using the mails in carrying out the scheme, and he brings error. Affirmed.

The defendant was indicted under section 215 of the Criminal Code of the United States (Act March 4, 1909, c. 321, 35 Stat. 1130 [Comp. St. § 10385]), and convicted under 15 of 20 counts for having devised a scheme and artifice to defraud, and to obtain money and property by means of certain false pretenses, representations, and promises, and by means of hypocritical

---

⊚═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied October 14, 1919.

doctrines written and advocated by him, and of using the mails of the United States in carrying out the scheme charged. It is alleged that Crane is the author of books and other kinds of literature and letters and advertising matter in which he attributes all human suffering, physical or mental, to certain mysterious influences, and that when such influences become operative the person affected thereby becomes the servant and tool of the influences, and that the very soul of the person affected becomes tainted; that said "influences are worse than any physical snakes. Their venom is poison to your career and opportunities, as well as to your physical life and to your very soul;" that when the influences make their attacks nothing can save the victim except the "Christ power"; that purity, prayer, and fasting or high resolves are useless, and for the victim to reject the help held out by Arthur Crane to save the victim from the dangers resulting from the influences would equal a refusal to wear a pair of strong boots if one were walking in jungle grass full of deadly snakes. It is alleged that Crane represented that he possessed supernatural powers, with the power to save the victims from the influences. The literature is alleged to set forth that Crane could be called upon by night or day by any one desiring treatment and that the method of treatment was as follows: The party being treated by Crane should relax, breathe deeply, and with every outgoing breath say that he is unloading all his care upon Arthur Crane; that the party receiving treatment is to take the position that he is breathing out all of his own opinions, desires, and all of his knowledge and possessions, that he knows nothing, owns nothing, wants nothing and believes nothing: that the party receiving the treatment is not to resist any unpleasant or evil thought that comes to him, but is to let the said Crane do all of the resisting for him, and that he is to consciously know that he is calling Crane and breathing in his alleged perfect vitality and harmony. It is charged that it was represented by Crane that before relaxing the party receiving the treatment is to write to Arthur Crane and tell him the time which he desires for his treatment; that when treatment is given the party receiving it must accept such treatment freely and with the idea of being benefited without rendering any return to Crane; that Crane represented that he transmits the "Christ power," and administered for good and not for profit from the sale of his books. All the pretensions and representations are negatived.

Letters written by Crane are set forth in the indictment as having been mailed through the post-office establishment with the purpose of carrying out the scheme. In one of the letters Crane wrote to a man in Kansas City, Mo., that he has answered all of the "problems" in the new $2 edition of The Great Exorcism, Crane's book, and that it contains, "among other good things," "All Mysteries," "The New Philosophy," "Light on the Path," "The Song of Life," "Christ of the Cosmos," "Answers to All Your Problems," "The Life of the I Am," etc., together with instructions for healing and relaxing, and letters "from those who have been healed." The letter tells the person that the book is well worth $5, and continues: "So if you will send me $1 towards its price I will give you credit for the $1 you sent before, and mail you the $2 book complete. Because I have answered your particular problems in this edition. I feel it is absolutely vital to you to have a copy. Send the $1 in the inclosed envelope at my risk." Other letters are generally similar. Some refer to money to be sent for treatment as not Crane's money, but must be sent as a gift for his aid in casting out "influences."

J. J. Dunne, of San Francisco, Cal., for plaintiff in error. Annette Abbott Adams, U. S. Atty., of San Francisco, Cal.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). The errors assigned may be grouped as follows: (1) Overruling objections to the indictment; (2) denial of a bill of particulars; (3) insufficiency of the evidence to justify the verdict; (4) admission of

'certain testimony; (5) certain instructions given, and refusal to give certain requests.

[1] It is said that the indictment alleges no facts showing fraud. But it clearly alleges a scheme to defraud people by means of the misrepresentations fully set forth. It also charges that the representations made were false and known to be false, and that the powers which Crane claimed to be able to exercise were not possessed by him, and that his acts and pretenses were fraudulently conceived, and were done with the purpose of defrauding.

[2] The charge was not one where defendant had a right to a bill of particulars. The indictment was plain, and fairly gave defendant information of what he must be prepared to meet on his trial.

[3] As to the sufficiency of the evidence: It is elaborately argued that there is "nothing inherently wrong in the theory of mental healing." In a general way that is conceded. The law, however, prohibits a scheme or artifice to defraud by means of false representations, and the use of the mails in executing the purposes of the scheme. One with corrupt purpose may devise a scheme to defraud by employing an alleged mental power to relieve suffering of mind or body, and may use the mails to carry out his corrupt scheme. From the voluminous record containing letters, circulars, and oral testimony, it is very clear that the court properly submitted to the jury the question whether the representations made by Crane were fraudulent and intentionally false, or were honestly made, or mere errors of judgment; and the learned judge consistently instructed that in doing the things charged, intent to defraud by false representations was essential to be proved by the prosecution. The fairness of the charge of the court is shown by the following excerpt:

"It is for you to say therefore, in this case, from all the facts and circumstances, whether defendant entered into or devised a scheme or artifice for the purpose of defrauding those with whom he might deal, as charged in the indictment, or whether he acted in good faith; he is not on trial for evolving or devising an improvident or impracticable scheme, even though you should find his plan to be such. Nor is he on trial for mere errors of judgment; neither is he on trial for evolving or devising a new religion, if it be such, with whose tenets you may not agree. The question here is not, in so far as the particular doctrines taught by the defendant are concerned, whether or not those doctrines are sound, or even plausible, but whether or not they were promulgated in good faith, and not for the purpose of fraudulently obtaining money from others. If in promulgating those doctrines, even though he received money therefor and used the mail as charged, the defendant was acting in good faith, he was not, as to them, engaged in a scheme to defraud. If you have reasonable doubt as to whether or not he was acting in good faith, you should acquit him. So that you will see, gentlemen, that under the facts developed here a very important question is as to the good or bad faith of the defendant."

The jury had before it many of the books and writings of the defendant, and without attempting to set forth the contents of these publications, it is to be specially pointed out that in the book written by the defendant called The Great Exorcism he wrote:

"I am God. I live in all bodies and am omnipresent. Thou canst not find any so-called evil place, but I am there. I, only I, am there, developing my bodies by devious ways. In every impulse I live conforming to no rule."

He also published that the Christ power is the only influence against these evil dangers, and represented in some of his literature that he was the possessor of the wonderful `power known as the "Christ power." It was also in evidence that in some of the literature Crane stated he would not charge for his treatments, but the evidence is that in several .instances, when a subject or confiding person sought his advice, he would speak of the sacrifice to be made, and then would ask for such giving as the sacrifice warranted. One witness testified that he submitted to treatment for nearly 2½ months; that sometimes he would go to sleep after treatment and have horrible dreams, such for instance, as that a she-devil had set a cancer in his legs, and it commenced to eat up his legs past the ankles, and that his mother came and woke him. Witness said that he wrote to Crane that he thought the "queen of hell," one of his characters, had charge of the switch board," and that he didn't want any more treatments from him; that the book The Great Exorcism described 13 devils; that the descriptions in the book concerning the various devils upset the witness. To another witness Crane wrote as follows:

"I care not who finds fault with me for asking you—you who would be rid of influences, to send me enough money so that you will miss it. When my first inspiration came to me, and I wrote The New Philosophy, in 1904, I avoided every appearance of money-getting, by refusing to sell that book and by insisting that only those could have it who would accept it free, and feel under no obligation, and by further insisting that contributions were not wanted. Hundreds have accepted the Christ power through me, and some have risen to the height of giving up something actually valuable, in spite of being told my then rule that no contributions were wanted."

One of the clerks in the employ of Crane testified that she had answered much of the correspondence in regard to the "so-called religion," The Great Exorcism, and that from 75 to 200 letters per day were received and sent out by Crane; that on the letters she saw markings of amounts of money that had been received. He also received a conveyance of real estate valued at $7,500. Crane afterwards sold the property, and never could reconvey without apparent loss to the original donor. Defendant kept a bank account in the name of Aallwyn's Law Institute, and under that account deposited money received from his "treatments." A witness testified that she had been employed by Crane, and that the system with which the work was was carried on was that—

" * * * After the party would become kind of engrossed in the work, and it was time for a sacrifice, that is to say if they stuck it out long enough and if they had a proper disposition, they were sure to get the CC letter or the LL letter, which was the sacrifice letter."

Much more evidence might be stated, but the references made are enough to demonstrate that the case was one for the jury.

[4, 5] The jury was told that defendant must be proved guilty beyond a reasonable doubt; that a reasonable doubt is that state of the case which, after the entire comparison and examination of all the facts and circumstances, leaves the minds of the jurors in that condition that they cannot say that they feel an abiding conviction to a moral certainty of the truth of the charge. This definition was ac-

companied by a further instruction to the effect that the prosecution was not called upon to make a case free from any possible doubt by proving defendant's guilt to an unassailable demonstration; that such proof was rarely obtainable in dealings with human transactions, and that there is hardly anything relating to human affairs that is not open to some possible or fanciful or imaginary doubt. Defendant excepted. Surely there was no error in the statement of the court. Nor do we find error in the several portions of the charge to which exceptions were taken. One of the requests for instruction was that the jury should not convict because defendant had been arrested upon the charge preferred. We see no error on the part of the court in refusing this request. The instructions laid down the presumption of innocence that the finding of the indictment was not proof of guilt, and that suspicion or probability would not justify conviction, and distinctly advised the jury as to the burden of proof, and the strength of the evidence required in order to warrant a verdict of guilty.

We have examined all assigned errors, and find that the rights of the plaintiff were in no way prejudiced.

The record shows that he had a fair trial, that the law was well stated by the instructions of the court, and that no ground is laid for disturbing the judgment against him.

Affirmed.