## TINCHER et al. v. UNITED STATES.*

(Circuit Court of Appeals, Fourth Circuit.
January 12, 1926.)

### No. 2371.

**1. Post office ☞48(4)—Allegation that fraudulent scheme was to be effected ·by use of mails is unnecessary, in prosecution for violation of statute against fraudulent use of mails (Penal Code, §§ 37, 215 [Comp. St. §§ 10201, 10385]).**

In prosecution under Penal Code, § 215 (Comp. St. § 10385), for fraudulent use of mails in scheme for sale of worthless oil leases, allegation that fraudulent scheme was intended to be effected by use of mails *held* unnecessary; Penal Code, § 37 (Comp. St. § 10201), being inapplicable.

**2. Post office ☞48(4)—Allegation or proof that matters sent through mails were calculated to carry out scheme to sell worthless oil leases held unnecessary (Penal Code, § 215 [Comp. St. § 10385]).**

In prosecution under Penal Code, § 215 (Comp. St. § 10385), for fraudulent use of mails in sale of worthless oil leases, allegation or proof that matters sent through mails were calculated to be effective in carrying out scheme *held* unnecessary.

**3. Post office ☞48(4)—Indictment charging defendants with scheme to defraud, describing scheme in detail and using mails in furtherance thereof, held sufficient to charge offense of fraudulent use of mails (Penal Code, § 215 [Comp. St. § 10385]).**

In prosecution under Penal Code, § 215 (Comp. § 10385), for fraudulent use of mails in sale of worthless oil leases, indictment charging defendants with having devised scheme to defraud, describing scheme in detail, and with using mails in furtherance thereof, describing specifically how mails were used, *held* sufficient.

**4. Criminal law ☞371(1)—Evidence of similar fraudulent transactions in prosecution for fraudulent use of mails in sale of worthless oil leases held admissible on question of intent (Penal Code, § 215 [Comp. St. § 10385]).**

In prosecution under Penal Code, § 215 (Comp. St. § 10385), for fraudulent use of mails, with prima facie showing of fraudulent scheme to sell worthless oil leases, evidence as to similar fraudulent transactions at or about same time *held* admissible as bearing on question of intent.

**5. Criminal law ☞371(1)—Evidence of ventures involving fraudulent intent similar to one charged in indictment is admissible on question of intent.**

Where fraudulent intent is one of material allegations in indictment, evidence of other and similar ventures by accused at or about same time is properly admissible on question of intent.

**6. Criminal law ☞1213—Individual sentences of 10 years for fraudulent use of mails held not "cruel and unusual punishment" (Penal Code, § 215 [Comp. St. § 10385]).**

Individual sentences of 10 years for violation of Penal Code, § 215 (Comp. St. § 10385),

*Certiorari denied 46 S. Ct. 475, 70 L. Ed. ——.

for fraudulent use of mails, being within limit prescribed by statute, *held* not "cruel and unusual punishment."

**7. Criminal law ☞1159(5)—Action of trial judge in imposing sentences within statutory limit is not reviewable, except ·for gross or palpable abuse.**

Where sentences imposed are within limit prescribed by statute, action of trial judge will not be reviewed on appeal, except in case of gross or palpable abuse.

**8. Criminal law ☞622(1), 911.**

Granting of separate trials and refusing to set aside verdict of jury and grant new trial are matters within sound discretion of trial court.

**9. Criminal law ☞1054(3).**

Generally sufficiency of evidence to support verdict cannot be reviewed by writ of error, unless exception is taken before a verdict to a ruling thereon.

**10. Criminal law ☞1036(8).**

Reviewing tribunal will only in very exceptional cases exercise its discretion to review sufficiency of evidence to sustain conviction, where point was not appropriately raised in lower court.

**11. Post office ☞50.**

In prosecution under Penal Code, § 215 (Comp. St. § 10385), for fraudulent use of mails in sale of worthless oil leases, evidence *held* for jury.

**12. Post office ☞35—Mailing of letter in fraudulent scheme to sell worthless oil leases was act of all defendants, where act was in furtherance of fraudulent scheme existing prior to mailing of such letter.**

Where mailing of letter by defendant with note and lease inclosed was an act done in furtherance of fraudulent scheme in sale of worthless oil leases, and scheme was in existence prior to mailing of such letter, mailing was in law act of all defendants.

**13. Post office ☞35—Government is not required to show defendants' fraudulent intent to effect fraudulent scheme by use of mails or that mails were to be used for communicating with person intended to be defrauded (Penal Code, § 215 [Comp. St. § 10385]).**

In prosecution under Penal Code, § 215 (Comp. St. § 10385), for fraudulent use of mails in sale of worthless oil leases, government was not required to show defendants' intent to effect their fraudulent scheme by use of mails, or that mails were used for communicating with person intended to be defrauded.

**14. Post office ☞35—Defendants were responsible for use of mails in swindling scheme in sale of worthless oil leases, though banks were innocent agencies.**

Where defendants deposited purchaser's checks in swindling scheme in sale of worthless oil leases in banks, with knowledge that mails would necessarily be used in their collection, and collection of checks was necessary part of scheme, defendants were responsible for use of mails by banks, though banks were entirely innocent agencies.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; George W. McClintic, Judge.

Ralph E. Tincher, Otto H. Beigel, D. J. Dillingham, and J. W. Smith were convicted of violating Penal Code, § 215, for fraudulent use of the mails, and they bring error. Affirmed.

The plaintiffs in error, hereinafter called defendants, were convicted of violating the statute against fraudulent use of the mails. Section 215 of the Penal Code (Comp. St. § 10385.) The fraud in connection with which the mails were used was a swindling scheme involving the sale of worthless oil leases. The plan followed by defendants was substantially as follows:

They would for a nominal consideration have an oil lease which they knew to be practically worthless made to one of their number as lessee. Then, having selected an intended victim in a section remote from the land which was the subject of the lease, another of the defendants would approach him, claiming to be the representative of a wealthy oil company anxious to purchase the lease and willing to pay a large sum of money therefor. The holder of the lease was represented as being ignorant of its value, and the victim was asked to aid in the purchase, ostensibly that the ignorant holder might not learn that his property was desired by the oil company. Having thus enlisted the services of the victim, the pretended representative would propose that they together defraud the company, by making the purchase themselves and reselling to the company at a large profit. A meeting would be arranged between the victim and another of the defendants, who would pose as the president of the company, and would agree in its behalf to purchase the lease at an extravagant figure. The holder of the lease would then close the trade with the victim, who would awake, after he had parted with his money, to find that the affluent company, the prosperous president, the plausible representative, and the ignorant leaseholder had suddenly vanished. The record shows that this scheme, with minor variations, was worked by various of the defendants in perpetrating or attempting to perpetrate at least nine different frauds.

The lease referred to in this indictment was an oil lease on 30 acres of land in Meigs county, Ohio, executed on April 12, 1924, by one Geary to defendant Smith, for which Smith had agreed to pay $350, and the value

of which did not exceed that amount. In June, 1924, Smith, in conjunction with the defendants Dillingham and Tincher and one Root, brother-in-law of Tincher, attempted to sell the lease to one E. B. Thompson, of Jackson, Ohio. Dillingham and Root represented to Thompson that they desired to purchase this lease and would not allow $50,000 stand in the way of their getting it. They urged Thompson to get in touch with Smith and help them purchase it. Thompson did get in touch with Smith, and Smith attempted to sell him a two-thirds interest in the lease for $8,000, but Thompson became suspicious and called the deal off.

Having failed on Thompson, Smith on September 10, 1924, wrote a letter to the Farmers' & Merchants' Bank of Catlettsburg, Ky., inclosing the lease, together with Dillingham's note for $1,000, and directed that the lease be delivered to Dillingham upon payment of the note. A few days later the defendant Tincher showed up in the office of one C. A. Croft, of Madison, W. Va., who up to that time had known none of the defendants, except Smith. Tincher asked Croft whether he knew a man by the name of Dillingham. Upon Croft replying in the negative, he stated that he was anxious to locate Dillingham; that Dillingham had a valuable oil lease, which he (Tincher) as representative of an oil company was anxious to acquire. At Tincher's suggestion Croft got in communication with Dillingham and entered into negotiations with him. Dillingham asked $7,000 for the lease. Tincher represented that it was worth much more, and offered Croft $1,000 to buy it for him at that price.

While these negotiations were pending he suggested that Croft buy the lease at $7,000, and that he and Croft sell it to the company for a large price and divide the profit. He introduced Croft to Biegel, who posed as president of the oil company, and who, after some parleying, agreed to pay $17,500. Croft then went with Dillingham to a bank in Ashland, Ky., and gave his check for $7,000, drawn on his bank in Madison, W. Va., and obtained in exchange a cashier's check for a like amount. He carried this cashier's check to the bank at Catlettsburg, where he delivered it to Dillingham and obtained the lease. Biegel approved the lease and told Croft to meet him in Huntington at the First National Bank, where the $17,500 would be paid him. Croft went to Huntington as directed, but Biegel failed to show up, and Croft saw no more of any of the de-

fendants until after the prosecution was instituted.

The $7,000 check delivered by Croft to the bank in Ashland was sent for collection to the Federal Reserve Bank of Richmond, and by it sent through the mail to Madison, W. Va. A check for $3,000 of the amount paid by Croft was drawn in Dillingham's favor by the cashier of the Catlettsburg bank and was deposited in a bank at Charleston, W. Va., and by it sent through the mails from Charleston for collection. The Catlettsburg bank sent Smith a check for $1,000, which was deposited with a bank at Charleston, and by the bank sent through the mail from Charleston for collection.

The indictment contains four counts. The first, stripped of verbiage, charges that the defendants had devised a scheme to defraud, in that they had agreed to induce some person to purchase from Dillingham the oil lease on the land in Meigs county, Ohio, at a large price, by falsely and fraudulently representing that Tincher and Biegel would purchase said lease from said person at a price far in excess of the price paid therefor, and that, in furtherance of said scheme, they caused to be mailed from Charleston the letter of September 10th inclosing the lease and the $1,000 note. The second, third, and fourth counts repeat the allegations as to the formation of the fraudulent scheme, and charge the sending through the mails of the $7,000 check, the $3,000 check, and the $1,000 check, respectively.

The defendants were convicted of all counts of the indictment, and were fined $500 each and sentenced to terms of imprisonment aggregating 10 years for each defendant.

A. M. Belcher, of Charleston, W. Va. (Lon H. Kelly, of Charleston, W. Va., on the brief), for plaintiffs in error.

Elliott Northcott, U. S. Atty., of Huntington, W. Va. (Lawrence L. McClure, Asst. U. S. Atty., of Southington, W. Va., on the brief), for the United States.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

PARKER, Circuit Judge (after stating the facts as above). [1-3] The first point urged upon us by defendants relates to the sufficiency of the indictment. As we understand their contention, it is that the counts of the indictment are defective in that they do not allege that the fraudulent scheme charged was intended to be effected by the use of the mails, and in that it does not appear from the indictment how the use of the mails alleged would have been effective in furthering the fraud. As to the first proposition, the answer is that this was not a prosecution for conspiracy under section 37 of the Penal Code (Comp. St. § 10201) to commit an offense under section 215 (Comp. St. § 10385). It is true that, in a prosecution of that character, it is necessary to allege that for the purpose of executing the scheme charged the defendants had conspired that the mails should be used.

But this was a prosecution for violation of section 215 itself, and in such case it is well settled that it is not necessary to allege that the fraudulent scheme was intended to be effected by use of the mails. Robins v. U. S. (C. C. A.) 262 F. 126; Smith v. U. S. (C. C. A.) 267 F. 665.

As to the second point, it was not necessary to allege or prove that the matter sent through the mails was calculated to be effective in carrying out the scheme. Savage v. U. S. (C. C. A.) 270 F. 14. Each of the counts of the indictment properly charges the defendants with having devised a scheme to defraud, describing the scheme in detail, and with using the mails in furtherance of the scheme, describing specifically how the mails were used. This was sufficient. U. S. v. Young, 34 S. Ct. 303, 232 U. S. 155, 58 L. Ed. 548; Crane v. U. S., 259 F. 480, 170 C. C. A. 456; Kaufmann v. U. S. (C. C. A.) 282 F. 776.

[4, 5] It is next urged that there was reversible error in admitting evidence as to participation by defendants in fraudulent transactions not connected with the fraudulent scheme charged in the indictment. Defendants contend that this evidence was inadmissible, because they say that there was no prima facie showing of the fraudulent scheme described in the indictment. But in this we cannot agree with the defendants. On the contrary, we think that the evidence adduced to establish the fraudulent scheme alleged was plenary, and that the evidence as to similar fraudulent transactions at or about the same time was properly admitted as bearing upon the question of intent. Defendants stoutly contended that the use of the mails was in good faith, and not in furtherance of any fraudulent scheme. The fact that the scheme set forth in the indictment was merely one of a number of fraudulent transactions, in which they were engaged at or about the same time, strongly tended to negative this contention. It is well settled that, where fraudulent intent is one of the material allegations in the indictment, evi-

dence of other and similar ventures by the accused at or about the same time is properly admissible as bearing upon the question of intent. Samuels v. U. S., 232 F. 536, 146 C. C. A. 494, Ann. Cas. 1917A, 711; Shea v. U. S., 251 F. 440, 163 C. C. A. 67; Colt v. U. S., 190 F. 305, 111 C. C. A. 205; Jones v. U. S., 179 F. 584, 103 C. C. A. 142.

[6, 7] The point is made that the sentences imposed upon the defendants constituted cruel and unusual punishment and amounted to an abuse of discretion on the part of the trial judge. No authority is cited to sustain this position, and it is obviously unsound. The sentences imposed were within the limit prescribed by the statute; and it is well settled that in such case the action of the trial judge will not be reviewed on appeal, except in case of gross or palpable abuse, which does not exist here. The judge who tries the case and hears the testimony is the best, as he is the sole judge of the merits, and if he acts within the boundaries prescribed by law his decision is final and unreviewable in an appellate court. 17 C. J. 254; State v. Woodlief, 90 S. E. 137, 172 N. C. 885.

[8] The remaining exceptions are addressed to the action of the court in refusing to grant separate trials to the defendants and in refusing to set aside the verdict of the jury and grant a new trial. That these were both matters within the discretion of the trial court is so well settled as to require neither discussion nor citation of authority.

[9-12] The greater part of the argument of defendants was addressed to the proposition that the testimony adduced on the hearing was not sufficient to support a conviction under the indictment. This point was not saved by a motion to direct a verdict in the court below nor in any other manner, and the general rule is that the sufficiency of the evidence to support a verdict cannot be reviewed by writ of error, unless exception is taken before a verdict to a ruling thereon. 17 C. J. 78, and cases cited. Only in very exceptional cases will this court exercise its discretion to review the sufficiency of the evidence to sustain a conviction, where the point was not appropriately raised in the court below. Robins v. U. S. (C. C. A.) 262 F. 126. The defendants have made no such showing as to take this case out of the general rule. Nevertheless, in view of the importance of the case to the defendants, we have reviewed the evidence, and are of opinion that it was amply sufficient to justify the submission of the case to the jury on each count of the indictment. The evidence showed clearly a fraudulent scheme entered into by the defendants, and there was evidence from which the jury could properly infer that the mailing of the letter by Smith, with the note and lease inclosed, was an act done in furtherance of the fraudulent scheme, and that the scheme was in existence prior to the mailing of the letter. In such case the mailing of the letter was in law the act of all the defendants. Farmer v. U. S., 223 F. 903, 911, 139 C. C. A. 341; Belden v. U. S. 223 F. 726, 730, 139 C. C. A. 256; Wiborg v. U. S., 16 S. Ct. 1127, 163 U. S. 632, 41 L. Ed. 289; Schwartzberg v. U. S., 241 F. 348, 154 C. C. A. 228.

[13] It was not necessary for the government to show that there was an intent on the part of the defendants to effect their fraudulent scheme by the use of the mails. This was necessary under section 5480, R. S., but it is not necessary in a prosecution under section 215 of the Penal Code. U. S. v. Young, 34 S. Ct. 303, 232 U. S. 155, 58 L. Ed. 548; Farmer v. U. S., 223 F. 903, 139 C. C. A. 341; Depew v. U. S., 255 F. 539, 166 C. C. A. 607. Nor was it necessary that the mails be used for communicating with the person intended to be defrauded. Ader v. U. S. (C. C. A.) 284 F. 13.

[14] With respect to the counts charging the forwarding of the checks for collection, it appears that the mails were used by the banks with whom these checks were deposited without knowledge on their part of the fraudulent scheme; but the defendants caused the checks to be deposited in these banks with knowledge that the mails would necessarily be used in their collection, and the collection of the checks was a necessary part of the working out of the scheme. In fact, it was through the collection of these checks that the defendants collected and divided the spoils of their fraud. In such case the defendants were responsible for the use of the mail by the banks, though the banks were entirely innocent agencies. Spear v. U. S., 228 F. 485, 143 C. C. A. 251; Shea v. U. S., 251 F. 440, 163 C. C. A. 67; Savage v. U. S. (C. C. A.) 270 F. 14; U. S. v. Kenofskey, 37 S. Ct. 438, 243 U. S. 440, 61 L. Ed. 836. "Responsibility cannot be avoided by the use of an innocent agency intentionally employed to reach and use the mails in effecting a scheme to defraud." Spear v. U. S., supra.

Upon a careful review of the entire record, we are satisfied that the defendants were properly convicted and that the judgment of the court below should be affirmed.

Affirmed.