## SMITH et al. v. UNITED STATES.
### No. 6468.

Circuit Court of Appeals, Fifth Circuit.
Nov. 26, 1932.

Rehearing Denied Dec. 16, 1932.

FOSTER, Circuit Judge, dissenting.

Reuben R. Arnold, Jas. A. Branch, and Mark Bolding, all of Atlanta, Ga., and Young M. Smith, of Asheville, N. C., for appellants.

Hal Lindsay, Asst. U. S. Atty., of Atlanta, Ga.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

The two appellants W. Clyde Smith and Ed. O. Ellis were convicted under an indictment which charged that they, John J. Durfield, one Godfrey, another named person, and divers other persons to the grand jury unknown, after devising a described scheme and artifice to defraud Roy E. Martin, and a class of persons including said Roy E. Martin, "did, for the purpose of executing said scheme and artifice, and for the purpose of attempting so to do, wilfully, knowingly and unlawfully and feloniously cause a certain letter from the Third National Bank, of Columbus, Georgia, to the Citizens & Southern National Bank, at Atlanta, Georgia, to be delivered by mail by the Post Office estab-

lishment of the United States, at Atlanta, in the County of Fulton and State of Georgia, enclosed in an envelope according to the direction thereon, addressed on the outside thereof to said Citizens & Southern National Bank, Atlanta, Georgia, and with postage prepaid thereon, said letter being as follows, to-wit:

"'3937.

"'Third National Bank, Columbus, Georgia.

"'W. C. Bradley, President.

"'J. J. Pease, Vice-President.

"'Jas. A. Lewis, Cashier.

"'W. M. Dimon, Asst. Cashier.

"'W. H. Chandler, Asst. Cashier.

"'August 23, 1929.

"'Citizens & Southern National Bank, Atlanta, Georgia.

"'Gentlemen: This letter is to introduce to you Mr. Roy E. Martin, who will be in your city during the coming week.

"'We have requested Mr. Martin to present this letter as an identification and should he desire funds we will advise you further as to the manner of payment by wire.

"'Signature of Mr. Martin appears below.

"'Yours very truly,

"'J. J. Pease,

"'Vice-President.

"'Roy E. Martin.

"'Roy E. Martin.'"

Hereinafter referred to evidence as to the accused fraudulently obtaining money from Roy E. Martin tended to prove substantially the scheme to defraud alleged in the indictment. The appellants demurred to the indictment on the ground, among others, that it did not allege how or in what way or by what means the defendants caused the above set out letter to be delivered by mail by the Post Office establishment of the United States. That demurrer was overruled. Only the appellants were put on trial. John J. Durfield, one of the accused, in the trial testified as a witness for the prosecution. Evidence tended to prove the following: In August, 1929, Roy E. Martin was a resident of Columbus, Ga., engaged in the real estate and theater business, and was operating ten theaters. For ten or twelve years he had known very well John J. Durfield, who was a film salesman, and had bought films from him. On or about August 16, 1929, Durfield introduced to Martin a man as Charlie Stone, who was identified by Martin as the accused W. Clyde Smith, Durfield stating that Stone had been working for the Western Union Telegraph Company for a number of years, then being engaged in instal-

ling relay equipment for that company, and that he had a proposition by which they could make some real money, to be split between Martin, Stone, and Durfield. Smith told Martin that, while temporarily relieving relay men, he, in co-operation with other relay men who were his partners, could delay messages as to stock transactions and give Martin advance information as to such transactions before it would be available to other people, so that such tips given to Martin would enable him to buy and sell stocks on margin on a sure thing. Smith asked Martin as to the money Martin had. Martin stated that he could get almost any amount he needed. Smith said, "Get all you can." After hearing the proposition, Martin said he would go along with them. He understood they were going to New York. On the same day, accompanied by Smith and Durfield, Martin went to the Third National Bank in Columbus. While Smith and Durfield waited on the outside, Martin went into the bank and got $200 in cash, $10,000 in New York exchange, and a copy of a letter of identification written by the bank to its correspondent in New York. When Martin came out and told Smith and Durfield what he had got, Smith said Martin could not get money on the New York exchange without being identified, whereupon Martin stated that the bank had written to their correspondent, and showed the copy of the letter of identification. Smith, Durfield, and Martin went to Canton, Ohio, Smith stating that he had been assigned to relieve a man off duty there. While Martin was there, accompanied by the appellant Ellis and Durfield, Smith called them up over the telephone and stated that he could give them some tips on horse races. On tips furnished by Smith, apparently successful bets on horse races were made at a place, of which B. W. Godfrey seemed to be the proprietor, which falsely simulated a turf exchange where bets on horse races were made. Smith expressed great dissatisfaction at the smallness of the amount of the winnings, saying that he could not afford to hold up messages for small amounts, and that, if Martin would go home, and get some real money, he would fool with him again. Smith and Durfield suggested to Martin that he get $1,000 bills. Smith suggested that Martin would have only ten or twelve minutes to go from where he got the tip to the place where the bet was to be made, and that, if he had large bills, less time would be consumed than would be required in counting small money. After this occurred, and after Martin had stated

that he would get real money, $50,000 to $60,000, if necessary, Martin, accompanied by Durfield, returned to Columbus. After they got back to Columbus, Durfield remained constantly with Martin, who stated "he didn't give me a chance to talk to anybody." Durfield accompanied Martin each of the several times the latter went to the Third National Bank of Columbus to arrange for borrowing from it $60,000.

On August 23, when the loan was made, Martin had a conversation with Mr. Pease, vice president of the bank, while Martin and Mr. Pease were at the latter's desk in an open office. During that time Durfield was up against a little rail not more than three or four feet away. Martin told Mr. Pease that he wanted $1,000 bills. Mr. Pease said they did not carry that amount of big bills in Columbus, but that Martin could get them from the bank's correspondent in Atlanta. Mr. Pease then dictated to a stenographer the letter to the Citizens' & Southern National Bank in Atlanta, copy of which is set out in the indictment, had Martin to sign his name on the original, which Mr. Pease said he would mail to the bank in Atlanta, and gave Martin a copy of the letter and a duplicate deposit slip for $60,000. When this had occurred, Martin showed the copy of the letter to Durfield, and told him they would mail the letter with his signature on it and he could get the money in Atlanta. Martin and Durfield went together to Atlanta, and they went together to the Citizens' & Southern National Bank in Alanta, where Martin handed to an official of that bank the copy of the letter he had. That official got the original letter with Martin's signature on it from the place where letters coming through the mail were usually kept, and, after calling Mr. Pease over the telephone to get him to confirm the paper, Mr. Pease, after hearing Martin's voice over the telephone, told that official to pay Martin $60,000, and that official had the teller of the bank get from the Federal Reserve Bank sixty $1,000 bills, which were delivered to Martin. At the time of that transaction such letters as the one of the Third National Bank with Martin's signature on it were customarily transmitted by mail. Neither the Third National Bank of Columbus nor the Citizens' & Southern National Bank of Atlanta employed a messenger between Columbus and Atlanta. Upon Martin getting the $60,000, he and Durfield returned to Columbus. During the same week they went back to Canton, Ohio, after Martin had been called over the telephone

by Smith, who, upon being informed that Martin had $60,000, said he had been assigned to work again in Canton on August 30th, and told Martin to be there on that date. On that date, in Canton, Smith told Martin over the telephone to place $60,000 on a horse named Hottentot. Thereupon Martin, Durfield, and Ellis went to the Godfrey place, and Martin put up his $60,000 on a bet that Hottentot would win, Ellis showing Martin how to make out his ticket. When it was announced that Hottentot was second in the race, it was claimed that Martin had lost because of his failing to follow instructions, in that he bet on Hottentot to win, and "to place" money on a horse meant a bet that he would be second in the race. Martin's companions convinced him at that time that the loss of his money was due to his own mistake in failing to follow Smith's betting instructions, and he did not get back any of his $60,000.

The court overruled motions made by each of the defendants upon the conclusion of the evidence that a verdict of acquittal be directed. The appellants seek a reversal of the judgment because of the overruling of the demurrer to the indictment, because of the overruling of the motions for a directed verdict of acquittal, because of rulings on evidence, and because of the court's refusal to give requested instructions.

■ The indictment was not subject to demurrer because of its failure to allege how or in what way or by what means the accused caused the set out letter to be mailed. To allege the particulars mentioned would amount to setting out or indicating the evidence expected to be relied on to prove that the accused caused the described letter to be mailed and the means used to accomplish the stated result. The allegations of the indictment being such as clearly to inform the accused of the nature and cause of the accusation against them, it was not subject to objection because it did not set out matters in the nature of evidence, or allege the particular means used to accomplish the stated result. Burton v. United States, 202 U. S. 344, 372, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362; Mark Yick Hee v. United States (C. C. A.) 223 F. 732; Chew v. United States (C. C. A.) 9 F.(2d) 348; McLendon v. United States (C. C. A.) 14 F.(2d) 12.

For the appellants it was contended in argument that the admission in evidence over objection of the letter set out in the indictment was erroneous because there was

no evidence that the letter was ever mailed. The admission in evidence of the letter was not objected to on that ground, the grounds stated being: "That the evidence in the case was not sufficient to show any connection of the defendants with this letter, or their connection with it in the way alleged in the indictment, namely, that they caused it to be mailed. The further objection was that the evidence had not connected the defendants with this letter, or mailing this letter, or causing it to be mailed, and, that being true, the evidence is irrelevant in the case." It seems, if the above-mentioned ground of objection had been called to the attention of the court, it would not have been tenable, as there was evidence of circumstances—that it was customary to transmit such letters by mail, that the letter in question reached its destination, that it was in the place in the Atlanta bank where letters received by mail were kept, and that neither the sending or the receiving bank used a messenger in transmitting letters from the one to the other—tending to prove that the letter was mailed. As the ground stated in the objection to the admission in evidence of that letter was covered by the contention, urged in behalf of the appellants, that, because there was no evidence that the accused, within the meaning of the statute (18 USCA § 338), "caused" that letter to be mailed, the court erred in refusing to direct a verdict of acquittal, the question whether there was or was not such evidence appropriately may be considered in passing on the last-mentioned ruling.

■ In support of the challenge of the court's action in denying the motions that a verdict of acquittal be directed, it was contended that the writing of the above-mentioned letter and the sending of it by mail were on the sole initiation of the bank at Columbus, and that under the evidence none of the accused was chargeable with causing the letter to be sent by mail. To sustain this contention would not be consistent with according due probative effect to circumstances which evidence tended to prove led up to and brought about that occurrence. As above indicated, there was evidence to the effect that a feature or element of the scheme to defraud Martin was the bringing about of the procurement by him in Georgia of a large sum of money in $1,000 bills, and the subsequent possession thereof by him in another state; that to accomplish that purpose Martin was kept constantly under the influence of one of the accused, Durfield, who, in pursuance of the scheme to defraud,

aided in inducing Martin to arrange with the Third National Bank of Columbus, Ga., to get $60,000 in $1,000 bills, when, in consequence of his knowledge of what had occurred a few days before when Martin arranged with that bank to get money for use elsewhere, he knew, or had reason to believe, that that bank, in making the arrangement sought, might not itself furnish the money desired, but would use the mails in arranging for Martin getting it elsewhere upon presenting a letter of introduction and identification transmitted by mail; that, when the official of the Columbus bank, in the conversation with Martin when his application was favorably acted on, stated that the letter of introduction would be mailed to the bank in Atlanta, Durfield was where he could hear that statement; and that Martin remained under the influence of Durfield until Martin, in the presence of Durfield, got $60,000 in $1,000 bills from the bank in Atlanta, Durfield then knowing that the letter sent by mail was a means of bringing about the accomplishment of that result. It cannot reasonably be denied that evidence adduced tended to prove that, in pursuance of the scheme to defraud Martin, one of the accused, who was a party to that scheme, influenced Martin to seek to arrange with the bank in Columbus to get $60,000 in $1,000 bills; that, when he did so, he knew or had reason to believe that the United States mails might or would be used in accomplishing that result, and that, while the making of the desired arrangement was in progress, and before it was concluded, he knew that the transmission of a letter by mail would be a means of bringing about the acquisition by Martin of $60,000 in $1,000 bills. We think that evidence adduced tended to prove that one of the accused, who was a party to the scheme to defraud, in pursuance thereof and for the purpose of executing that scheme or attempting so to do, so participated in the transaction which included the use of the mails, when he knew or had reason to believe that the mails would be used in that transaction—that being a natural and probable part of such a transaction—as, within the meaning of the statute, to become chargeable with causing or bringing about the sending or delivery of the mentioned letter by the Post Office establishment of the United States, though that letter was sent by one having no knowledge of or guilty connection with the alleged fraudulent scheme. United States v. Kenofskey, 243 U. S. 440, 37 S. Ct. 438, 61 L. Ed. 836; Shea v. United States (C. C. A.) 251 F. 440, 448; Grant v.

United States (C. C. A.) 268 F. 443, 446; Estelle v. United States (C. C. A.) 268 F. 530; Ader v. United States (C. C. A.) 284 F. 13; 49 C. J. 1209. We conclude that the ruling now under consideration was not erroneous.

Assignments of error were based on the court's refusal to give the following requested instructions:

"The Court further instructs you that if you should find from the evidence that such a letter as is set out in the indictment was in fact delivered by the Post Office Establishment of the United States, but that the defendants did not cause said letter to be delivered by mail or know that said letter was to be deposited in the mail until after the letter had been written and deposited in the mail, then I charge you that you would not be authorized to convict the defendants, or either of them.

"The Court charges you further that even though you may believe from the evidence that a scheme to defraud, as alleged in the indictment, may have been devised by the defendants, yet these defendants would not be guilty of the offense charged unless you further believe from the evidence beyond a reasonable doubt that the use of the mails in the delivery of said letter was caused by the defendants knowingly or that it was the inevitable result of the alleged scheme to defraud."

Without explanation, each of these instructions was likely to be understood by the jury as forbidding the conviction of the defendants who were on trial unless the evidence showed beyond a reasonable doubt that one or both of them participated in causing the mailing of the mentioned letter. The guilt of the accused who were on trial was not dependent upon either of them taking part in causing the alleged use of the mails, if another accused who was a party to the alleged scheme to defraud, but was not on trial, in pursuance of that scheme and for the purpose of executing it or attempting to do so, knowingly caused the alleged use of the mails. United States v. Young, 232 U. S. 155, 161, 34 S. Ct. 303, 58 L. Ed. 548; Silkworth v. United States (C. C. A.) 10 F.(2d) 711, 719. Because of the misleading feature of each of the above set out requested instructions, the court is not chargeable with error in refusing to give them, assuming, without conceding, that otherwise they were not subject to adverse criticism.

The record shows no reversible error. The judgment is affirmed.

FOSTER, Circuit Judge (dissenting).

It is evident that the defendants in devising their scheme to defraud Martin had no intention of using the mails, and it was not at all necessary that the mails should be used in any way in executing the scheme. The mailing of the letter, which forms the basis of the indictment, was merely an incident in the negotiations between Martin and his bank. The defendants on trial had no reason to believe that such a letter would be mailed. It seems to me it is stretching the statute entirely too far to sustain the conviction in this case. I therefore respectfully dissent.

On Petition for Rehearing.

PER CURIAM.

As neither of the judges who concurred in the judgment of the court in the above numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same hereby is, denied.