### HART et al. v. UNITED STATES.
### No. 9272.

Circuit Court of Appeals, Fifth Circuit.
May 24, 1940.

Rehearing Denied July 16, 1940.

Hugh M. Wilkinson, Warren Doyle, Walter B. Hamlin, John D. Lambert, William C. Orchard, Bernard J. Daly, and George Seth Guion, all of New Orleans, La., Roland C. Kizer, of Baton Rouge, La., John R. Hunter, of Alexandria, La., and O. R. McGuire, of Washington, D. C., for appellants.

O. John Rogge, Asst. Atty. Gen., Harold Rosenwald and Alfred B. Teton, Sp. Assts. to the Atty. Gen., Rene A. Viosca, U. S. Atty., and Leon Hubert, Jr., Herbert W. Christenberry, and Robert Weinstein, all of New Orleans, La., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

Monte E. Hart, James Monroe Smith, J. Emory Adams, Seymour Weiss, and Louis C. LeSage were convicted under two counts of an indictment charging them with having used the mails to defraud Louisiana State University and Agricultural and Mechanical College, the State of Louisiana and its taxpayers, all in violation of Section 215 of the Criminal Code, 18 U.S. C.A. § 338. Appeals were taken by all the defendants but before submission the appeal of Smith was abandoned.

The record shows that Lee Circle Hotel Company, Inc., was organized in 1934 by Seymour Weiss, J. P. O'Shaughnessy, and E. L. Campbell. Weiss became president of the company and Monte Hart became its vice-president. In 1934 the Lee Circle Company purchased the Bienville Hotel in New Orleans and operated it for about two years. The hotel was losing money at the rate of over $50,000 per year, and on September 24, 1936, the Lee Circle Company board of directors authorized Weiss to negotiate for the sale of the hotel.

In 1936 the Board of Supervisors of Louisiana State University met and discussed the purchase of the Bienville Hotel. The minutes of that meeting recite the adoption of a resolution authorizing Governor Leche and James Monroe Smith, the University president, to purchase the land on which the hotel was located, "Together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, advantages and appurtenances thereunto belonging or in any wise appertaining." The records do not show that the Board of Supervisors ever approved the terms of the resolution as reported in the minutes.

On December 2, 1936, the Lee Circle Company directors passed a resolution approving the sale to Louisiana State University and Agricultural and Mechanical College of the land of the Bienville Hotel, "Together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, advantages, and appurtenances thereunto belonging or in any wise appertaining, and all equipment, engines, boilers, heating and lighting apparatus, lifts and fixtures contained therein or affixed thereto" for the price and sum of $575,000 cash, 1936 taxes to be prorated. The board authorized either Hart or Weiss to execute the act of sale conveying the property.

On December 3, 1936, the Bienville Hotel property was formally conveyed to L. S. U. by an act of sale executed by Monte Hart, acting for the Lee Circle Company, and by Leche and Smith, acting for L. S. U. The act of sale was prepared by Justin Wolff, attorney for Lee Circle Company, and described the property in the exact language of the sale resolution adopted by the Lee Circle Directors.

It is quite clear from the evidence found in the record that the Board of Supervisors of L. S. U. and the board of directors of Lee Circle Company intended and understood that all the property of Bienville Hotel, of every kind and description, including the furnishings, was to be conveyed to the University for the total sum of $575,000.

There were fourteen members of the University Board of Supervisors and twelve of them testified at the trial. Nearly every member except Governor Leche testified that the $575,000 was for the hotel completely furnished. Governor Leche testified that there was only one sale and that the price was "over $600,000." Prior to the trial, however, he stated under oath to an Internal Revenue Agent that the purchase price was $550,000 and "included that outfit as it stood, teaspoons, tablecloths,

window shades, and everything as it stood." Directors Lally and O'Shaughnessy of the Lee Circle Company and Green, its secretary, were the only board members other than Hart and Weiss that attended the directors' meeting which authorized the sale. Illness prevented O'Shaughnessy from testifying. Lally who attended the meeting and who had discussed the sale with Weiss testified that Lee Circle Company was selling the Bienville "as it was, everything that was there," and that the $575,000 included the furnishings. He was never informed of any separate sale of the furnishings and no such sale was ever mentioned at any meeting of the board. He had never heard of the National Equipment Company and he knew of no agreement to give the furnishings to Hart or anyone else as a commission. Green testified that one sale of the property was contemplated; that he never heard of any separate sale of the furniture until July 17, 1939; and that nothing in the minutes of the Lee Circle Company showed that the furnishings were to be retained or were to be transferred separately to Hart, to the National Equipment Company, or to L. S. U.

The evidence further shows that although the Bienville Hotel, including its furnishings of every kind and description, had been sold to L. S. U., the defendants in furtherance of a scheme to defraud sold the furnishings again to L. S. U. for $75,000 through National Equipment Company, a corporation which was practically out of business and which was absolutely controlled by Monte Hart. Hart prepared a bill for the furnishings of the hotel on a new and specially printed billhead of the National Equipment Company. The billhead gave the address of the company at a place where it had never resided, and recited that the company specialized in the sale of hotel and restaurant lay-outs. The bill was presented to L. S. U. and was approved by Smith, president of the University, who caused the check of the University to issue in favor of the National Equipment Company. Hart received the check for $75,000 in Baton Rouge. He took the check to New Orleans and induced Ames, vice-president of National Equipment Company, to indorse it. Ames testified that he indorsed the check without having seen its face and without knowing for what purpose it had been given. Hart then took the check to the City Bank Branch of the Whitney National Bank in New Orleans. He indorsed it, received $25,000 in cash, and opened an account for $50,000 in the name of National Equipment Company. Hart testified that he paid Adams $25,000 in cash; this being Adams' and Smith's commission on the resale of the furnishings of the hotel.

Although the records of National Equipment Company show payment of the $25,000 to Adams as a commission on the sale, Adams testified that he never received the money. He contended that the defendant Smith asked him to report the $25,000 on his federal income tax return on account of the "political situation." Adams reported the $25,000 item on his return and paid his income tax in installments with money furnished by Smith for that purpose.

In the regular course of business the City Bank Branch sent the $75,000 L. S. U. check to the main office of the Whitney Bank which in turn sent it to the New Orleans Branch of the Federal Reserve Bank of Atlanta. The Federal Reserve Branch then forwarded the check for collection by first class United States mail to the drawee bank, City National Bank of Baton Rouge, which received the cash, letter and check and promptly mailed its receipt to the Federal Reserve Branch at New Orleans.

The evidence further shows that after the L. S. U. check had cleared, Hart proceeded with the distribution of the remainder of the money received for the resale. He drew a $25,000 National Equipment Company check payable to Louis C. LeSage for "Commission equipment LSU." Ames countersigned the check without knowing, according to his testimony, what the check was for. LeSage accepted the check, cashed it, and later turned over $16,500 of this money to Weiss. The Lee Circle Company records disclose that Weiss had received a commission of $27,500 from the $575,000 sale for his efforts in bringing about the sale. Weiss testified that he had Hart handle all negotiations and that Hart was to receive all proceeds of the sale in excess of $575,000. The books of the Lee Circle Company reflect no such agreement.

We do not follow the evidence further here.

■■ The appellants contend that the court erred in overruling the demurrer to the indictment. They challenge the allegations relating to the scheme to defraud

and use of the mails as being insufficient. There is no merit in the contention. The indictment clearly charged an offense in violation of the statute and set up the essence of the offense with sufficient particularity to enable the defendants to properly prepare their defense. "It is enough to sustain an indictment that the offense be described with sufficient clearness to show a violation of law, and to enable the accused to know the nature and cause of the accusation and to plead the judgment, if one be rendered, in bar of further prosecution for the same offense." United States v. Behrman, 258 U.S. 280, 288, 42 S.Ct. 303, 304, 66 L.Ed. 619; United States v. Kenofskey, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836; Cowl v. United States, 8 Cir., 35 F.2d 794; Bogy v. United States, 6 Cir., 96 F.2d 734.

■■ The appellants further contend that when Hart presented the $75,000 L. S. U. check to the Whitney Bank the scheme to defraud was at an end and that they were not responsible for any mailing that took place thereafter. They also charge that any mailing that took place was purely incidental and no part of the scheme to defraud. Cf. Spillers v. United States, 5 Cir., 47 F.2d 893; McLendon v. United States, 6 Cir., 2 F.2d 660; Barnes v. United States, 8 Cir., 25 F.2d 61; Burton v. United States, 196 U.S. 283, 25 S. Ct. 243, 49 L.Ed. 482.

This case is different. The scheme here set out in the indictment and proved at the trial was one to defraud Louisiana State University, not one to defraud the Whitney Bank. The scheme to defraud was not at an end when Hart indorsed and presented the check to the bank for no one had yet been defrauded. Louisiana State University and Agricultural and Mechanical College, the State and its taxpayers, sustained no actual loss until the check had been finally paid, and it is clear that before the L. S. U. account was charged with this item the University might have intervened to stop payment and the fraudulent scheme would have been frustrated. When Monte Hart presented the check to City Bank Branch it could be reasonably foreseen that in the usual course of events the check would pass through the United States mails to Baton Rouge to be paid. Hart clearly caused the mails to be used in furtherance of the scheme to defraud and all the defendants, being partners in crime,

are chargeable with his conduct in the matter. In Section 215, the mail fraud statute, the important words are "place, or cause to be placed, any letter, postal card, package, writing * * *" in the mails. It was sufficient to charge and show that the fraudulent scheme was one "which reasonably contemplated the use of the mails." Spivey v. United States, 5 Cir., 109 F.2d 181, 184, certiorari denied; United States v. Kenofskey, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836; Smith v. United States, 5 Cir., 61 F.2d 681; Alexander v. United States, 8 Cir., 95 F.2d 873; Corbett v. United States, 8 Cir., 89 F.2d 124; Meyer v. United States, 9 Cir., 220 F. 800; United States v. Weisman, 2 Cir., 83 F.2d 470, 107 A.L.R. 293; Bogy v. United States, 6 Cir., 96 F.2d 734; Belt v. United States, 5 Cir., 73 F.2d 888.

■ The proof in this case shows a fraudulent scheme and a use of the mails in furtherance of the plan. The court properly refused to give a directed verdict. Kellogg v. United States, 6 Cir., 103 F. 200; Dimmick v. United States, 9 Cir., 135 F. 257; Corbett v. United States, 8 Cir., 89 F.2d 124, 127(5).

■ The appellants can take nothing by the court's refusal to grant them a bill of particulars. This was a matter resting within the sound discretion of the trial court and it does not appear that discretion was abused in this case. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545; Beland v. United States, 5 Cir., 100 F.2d 289; Ginsberg v. United States, 5 Cir., 96 F.2d 433.

■■ The defendants charge that they were prejudiced in that they were not allowed sufficient time in which to prepare their defense. They also point to numerous newspaper articles which they allege caused much public excitement and prevented them from obtaining a fair and impartial trial. The record shows that the court carefully considered the motion for continuance and that every effort was made to assure a fair and impartial jury trial. During the trial jurors were admonished by the trial judge not to read newspapers or listen to radio accounts of the trial. See United States v. Wood, 299 U.S. 123, 133, 57 S.Ct. 177, 81 L.Ed. 78. The defendants had ample time to prepare for trial and the record fails to disclose that any juror was prejudiced or biased. Moreover,

132

the denial of a motion for continuance is within the discretion of the court and, in absence of a showing of abuse of discretion, the ruling of the court on such motion will not be disturbed on appeal. We find no abuse of discretion in this case. Schackow and Kuhrig v. Govt. of Canal Zone, 5 Cir., 108 F.2d 625; Isaacs v. United States, 159 U.S. 487, 16 S.Ct. 51, 40 L.Ed. 229.

■■ Care was exercised by the court to protect the rights of the defendants and the charge given fully and fairly stated the law of the case. The refusal to give the charges specially requested by the defendants was not error. A court is not required to charge a jury in any particular form of words, and where the general charge covers the law it is sufficient. Coffin v. United States, 162 U.S. 664, 16 S. Ct. 943, 40 L.Ed. 1109; Schackow and Kuhrig v. Govt. of Canal Zone, 5 Cir., 108 F.2d 625; Mansfield v. United States, 8 Cir., 76 F.2d 224; McAdams v. United States, 8 Cir., 74 F.2d 37.

We have carefully read and considered each and every ruling of the court on the admission and exclusion of evidence. We find no reversible error.

The evidence sustains the conviction. The judgment as to each of the appellants is affirmed.

Affirmed.