378

## DECKER v. UNITED STATES.
### No. 5175.

Circuit Court of Appeals, Fourth Circuit.
Jan. 21, 1944.

See, also, 140 F.2d 375.

William D. Donnelly, of Washington, D. C. (Cummings & Stanley, of Washington, D. C., on the brief), for appellant.

Ellis L. Arenson, Sp. Atty., Department of Justice, of Baltimore, Md. (Bernard J. Flynn, U. S. Atty., of Baltimore, Md., and Wm. A. Paisley, Sp. Asst. to the Atty. Gen., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Joseph Decker (hereinafter called Decker), vice-president and general manager of Triumph Explosives, Incorporated (hereinafter called Triumph), under an indictment containing five counts, was tried, convicted and sentenced in the United States District Court for the District of Maryland, for violations of the Mail Fraud Statute, 18 U.S.C.A. § 338. We think the judgment appealed from should be affirmed for the reasons set out in the opinion of Judge Chesnut in the District Court (51 F. Supp. 15), and on the strength of the opinion of Judge Parker, speaking for our court, in Tincher v. United States, 4 Cir., 11 F.2d 18, certiorari denied 271 U.S. 664, 46 S.Ct. 475, 70 L.Ed. 1139.

There can be no doubt here as to the existence of a clearly fraudulent scheme. We need concern ourselves solely with the question whether Decker caused the use of the mails in execution of the fraudulent scheme.

The fraudulent scheme, for our purposes, can be briefly stated. One Elizabeth Jackson (hereinafter called Jackson), Assistant Secretary of Triumph, and personal secretary to Decker, was instructed by Decker and his accomplice, Kann, president of Triumph, to draw checks on Triumph, payable to Jackson, on the Peoples-Pittsburgh Trust Company, of Pittsburgh, Pennsylvania. These checks were cashed by Jackson at the Peoples

Bank of Elkton at Elkton, Maryland, the proceeds were turned over by Jackson to Decker and/or Kann and false entries were made on Triumph's books to make it appear that the money was spent to pay commissions due and payable by Triumph.

Judge Chesnut left the issue of the use of the mails to the jury by charging: "Furthermore, you must find beyond a reasonable doubt that the sending through the mails of one or more of the five checks was in execution or attempted execution of the fraud on the corporation; *and you must find that the checks, if they were mailed, were mailed while this scheme to defraud was still continuing."* (Italics ours.)

Later in the charge this was again emphasized. We think there was substantial evidence to support the jury's finding of this issue against Decker.

Decker, the managing executive of Triumph and a man of wide business experience, could hardly have been ignorant of the fact that the Elkton Bank, cashing these checks, would transmit them to the Pittsburgh Bank, on which the checks were drawn, through the mails. The testimony of Robinson, cashier of the Elkton Bank, as to the unvaried custom of his bank to use the mails in this connection, was clear and convincing. Such proof of a settled custom has repeatedly been held to be sufficient to take this question to the jury. Thus, District Judge Grubb, speaking for the Circuit Court of Appeals of the Fifth Circuit, in Headley v. United States, 294 F. 888, 890, said: "The custom and course of business of the witness Chance as to the place in which he ordinarily deposited mail matter was some evidence that the letter was posted in Texas, and in the absence of contradiction would suffice as a basis for the verdict of the jury."

And see, Dunlop v. United States, 165 U.S. 486, 17 S.Ct. 375, 41 L.Ed. 799; Demolli v. United States, 8 Cir., 144 F. 363, 6 L.R.A.,N.S., 424, 7 Ann.Cas. 121; Spear v. United States, 8 Cir., 246 F. 250; Savage v. United States, 8 Cir., 270 F. 14; Levinson v. United States, 6 Cir., 5 F.2d 567, certiorari denied 269 U.S. 564, 46 S.Ct. 23, 70 L.Ed. 414; Tincher v. United States, 4 Cir., 11 F.2d 18; McIntyre v. United States, 6 Cir., 49 F.2d 769; United States v. Weisman, 2 Cir., 83 F.2d 470, 107 A.L.R. 293; Goodman v. United States, 3 Cir., 97 F.2d 197. See, also, Wolf v. Union Trust Co., 150 Md. 385, 391, 133 A. 121; Wigmore on Evidence, (2d Ed.) Vol. 1, § 95, 1934 Supplement, § 95.

One other contention of Decker need be considered. He insists that when each check was cashed by the Elkton Bank and the proceeds were received the fraudulent scheme had been entirely completed and, consequently, any subsequent mailing of the checks was not in furtherance of the execution of the fraudulent scheme. To this, we think there are at least two sufficient answers.

Here the fraudulent scheme was clearly a continuing one. There is every reason to infer that the scheme would have continued more or less indefinitely until the detection of the fraud, which seems to have been effected largely through the investigations of Lieutenant Commander Seidman of the Price Adjustment Board of the Navy Department. This issue was also left to the jury by Judge Chesnut in the portion of his charge quoted above in this opinion.

Even if the scheme be limited to one isolated transaction, the cashing of a single check, we still think this contention lacks merit. The indictment charged a scheme to defraud Triumph, and Triumph was not defrauded, i.e., suffered no economic detriment, until the check had been received through the mail by the Pittsburgh Bank and had been charged against Triumph's account in that bank. Thus, the complete and final success of the fraudulent scheme required the use of the mails for its ultimate successful consummation. As Judge Parker said in the Tincher case, supra, 4 Cir., 11 F.2d 18, 21: "The defendants caused the checks to be deposited in these banks with knowledge that the mails would necessarily be used in their collection, and *the collection of the checks was a necessary part of the working out of the scheme."* (Italics ours.) And see Hart v. United States, 5 Cir., 112 F.2d 128, certiorari denied 311 U.S. 684, 61 S.Ct. 60, 85 L.Ed. 441; United States v. Leche, D.C., 34 F.Supp. 982; Id., 5 Cir., 118 F.2d 246, certiorari denied 314 U.S. 617, 62 S.Ct. 73, 86 L.Ed. 496; Steiner v. United States, 5 Cir., 134 F.2d 931.

Finally, we agree with Judge Chesnut that, under the circumstances of this case, it is unnecessary to consider whether or not the Elkton Bank, under the law of negotiable instruments, acquired title to the checks and thus mailed the checks in the role of owner to the Pittsburgh Bank. The condemnation of the

Mail Fraud Statute falls broadly upon one who, in furtherance of a fraudulent scheme, causes the use of the mails. See the Tincher case, supra; Hart v. United States, 5 Cir., 112 F.2d 128 certiorari denied 311 U.S. 684, 61 S.Ct. 60, 85 L.Ed. 441. And cf. United States v. Kenofskey, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836; Demolli v. United States, 8 Cir., 144 F. 363, 6 L.R.A.,N.S., 424, 7 Ann.Cas. 121; Smith v. United States, 5 Cir., 61 F.2d 681, 684.

We, accordingly, affirm the judgment of the District Court.

Affirmed.