## PRICE v. UNITED STATES.

### No. 13884.

United States Court of Appeals
Fifth Circuit.

Jan. 6, 1953.

Dallas Scarborough, Abilene, Tex., D. A. Frank, Dallas, Tex., for appellant.

David Ferber, Special Counsel, Securities & Exchange Comm., Milton P. Kroll, Asst. Gen. Counsel, Washington, D. C., Frank B. Potter, U. S. Atty., Fort Worth, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH, and RIVES, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a final judgment of conviction of the offense prescribed by 15 U.S.C.A. 77e(a) (2) and 77x.[1] The indict-

1. The pertinent provision of Section 77e (a) (2) reads as follows:

"Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly
—* * *

ment consisted of four counts each of which charged that the defendant "did unlawfully, willfully and feloniously cause to be carried through the United States mails for the purpose of sale and delivery after sale to numerous purchasers certain securities, to wit: investment contracts evidenced by oil and gas lease assignments on lands located in Runnels County, Texas, coupled with collateral agreements, promises and undertakings that oil wells would be and were being drilled in order to prove the productivity of the surrounding area, including the acreage conveyed by said lease assignments, no registration statement being in effect as to such securities with the United States Securities and Exchange Commission." Each count further charged that the defendant in effecting the said sale of securities caused to be delivered by the United States Mails a letter enclosing an assignment or assignments of oil and gas leases which evidenced the investment contracts theretofore described. The four letters were dated respectively, (1) May 17, 1948, (2) July 29, 1948, (3) August 3, 1948 and (4) May 17, 1948; the first two letters being addressed to Maumee Oil Corporation, and the third and fourth letters to Evan Marquardt and W. H. Crandall, all of Toledo, Ohio. A jury found the defendant guilty on all four counts and the court sentenced him to thirteen months imprisonment and to pay a fine of $1,000.

Appellant sets forth in numerous specifications of error four principal contentions: (1) that the trial court's sentence was harsh and unjustified because there was no charge of fraud in appellant's handling of the oil leases, and because the court considered appellant's record of prior convictions which he had no opportunity to explain or refute and which were too remote in point of time for proper consideration by the court; (2) that the assignments were not "securities" within the

meaning of the statute; (3) that the evidence showed that each of the assignments executed by appellant was a completed transaction by which title passed in San Angelo, Texas; and (4) that the court erred in charging the jury that "if you find and believe from the evidence *beyond a reasonable doubt* that counsel, George T. Wilson, was empowered and authorized to act as agent for the purchaser of these stocks * * * the defendant would be entitled to an acquittal" (Emphasis supplied), because that charge misplaced the burden of proof.

■ (1) It was, of course, proper for the judge to consider any prior criminal record of the defendant in connection with the imposition of sentence, Rule 32(c) Federal Rules of Criminal Procedure, 18 U.S.C.A.; Williams v. New York, 337 U. S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337. Fraud is not a necessary constituent of the offense, for disclosure through registration to give investors the means of knowledge was the purpose of this remedial statute. Frost & Co. v. Coeur D'Alene Mines Corp., 312 U.S. 38, 43, 61 S.Ct. 414, 85 L.Ed. 500; Otis & Co. v. Securities and Exchange Commission, 6 Cir., 106 F.2d 579, 583. The sentence was within the statutory limits of punishment and is not subject to review by this court. United States v. Rosenberg, 2 Cir., 195 F.2d 583, 604.

■ (2) It is now settled that the investment contracts described in the indictment were "securities" within the meaning of the Act and under the decision of the Supreme Court in Securities and Exchange Commission v. C. M. Joiner Leasing Corporation, 320 U.S. 344, 352, 64 S. Ct. 120, 88 L.Ed. 88. See also Mansfield v. United States, 5 Cir., 155 F.2d 952, 954, 955.

■ (3) The theory of the defense in the District Court was largely that the lawyers who mailed the securities repre-

---

"(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."

Section 77x provides that, "Any person who willfully violates any of the provisions of this subchapter * * * shall upon conviction be fined not more than $5,000 or imprisoned not more than five years, or both."

sented and were acting for the purchasers, and hence that title passed in San Angelo, Texas. The statute makes express provision for cases where the securities are carried through the mails "for delivery after sale." Further the Act reaches persons who "directly or indirectly * * * cause to be carried through the mails" unregistered securities for the purposes prohibited. At the time of the enactment of the Securities Act, the mail fraud statute, 18 U.S.C. 1940 ed. Sec. 338, made it a federal offense to "place, or cause to be placed, any letter (etc.) in any post office (etc.) to be sent or delivered by the post office establishment of the United States" for the purpose of executing a scheme to defraud.[2] The provision "directly or indirectly" was not a part of the mail fraud statute but is a part of the Securities Act. Under this Act explicitly proscribing indirect causation, the holdings should certainly be not less strict than under the mail fraud statute. This Court has spoken clearly on the mail fraud statute:

> "We think that evidence adduced tended to prove that one of the accused, who was a party to the scheme to defraud, in pursuance thereof and for the purpose of executing that scheme or attempting so to do, so participated in the transaction which included the use of the mails, when he knew or had reason to believe that the mails would be used in that transaction—that being a natural and probable part of such a transaction—as, within the meaning of the statute, to become chargeable with causing or bringing about the sending or delivery of the mentioned letter by the Post Office establishment of the United States, though that letter was sent by one having no knowledge of or guilty connection with the alleged fraudulent scheme." Smith v. United States, 5 Cir., 61 F.2d 681, 684.[3]

It follows that considerations of agency and of when and where title passes are relevant only when they bear upon the question of whether the defendant directly or indirectly caused the unregistered securities to be carried through the mails for the purpose of sale or for delivery after sale.

(4) If the defendant did not know or have reason to believe that the mails would be used in the transaction, then the fact, if it be a fact, that the attorneys who actually mailed the letters represented the purchasers would be a complete defense, for in that event the defendant would not be guilty of causing the securities to be carried through the mails. Admittedly, the charge quoted in what we have referred to as the appellant's fourth contention was erroneous in placing the burden on the defendant to prove beyond a reasonable doubt that the lawyer was authorized to act as agent for the purchaser. The burden was, of course, on the prosecution to establish the guilt of the defendant beyond a reasonable doubt. The defendant's counsel clearly and specifically objected to the charge as misplacing the burden of proof and the objection was overruled by the court. The Government argues that the error was harmless because the alleged agency issue was not a defense to the charge. As we have explained, however, it was relevant for consideration on the issue of whether the defendant caused the securities to be carried through the mails for the purpose of sale or for delivery after sale. Alternatively, the Government argues that the erroneous charge was cured by other parts of the court's charge. We cannot speculate as to which part would be accepted by the jury, nor can we say with fair assurance that the jury's verdict would not have been different had the burden of proof on this question not been misplaced. Kotteakos v. United States, 328 U.S. 750,

---

2. The causation language has now been eliminated from the mail fraud section, 18 U.S.C.A. § 1341, probably because the definition of "principal" in 18 U.S.C.A. § 2 achieves the same result.

3. See also United States v. Weisman, 2 Cir., 83 F.2d 470, 474, 107 A.L.R. 293; Blue v. United States, 6 Cir., 138 F.2d 351, 359; Richardson v. United States, 6 Cir., 150 F.2d 58, 62.

763, 765, 66 S.Ct. 1239, 90 L.Ed. 1557. For the error in so charging the jury the judgment is reversed and the cause remanded for a new trial.

Reversed.