Harold W. DANSER, Jr., Defendant, Appellant,

v.

UNITED STATES of America, Plaintiff, Appellee.

No. 5616.

United States Court of Appeals
First Circuit.

Heard April 7, 1960.

Decided Sept. 7, 1960.

James D. St. Clair, Boston, Mass., with whom Blair L. Perry and Hale & Dorr, Boston, Mass., were on brief, for appellant.

Joseph S. Mitchell, Jr., Asst. U. S. Atty., Boston, Mass., with whom Mahlon

Frankhauser, Atty., Securities and Exchange Commission, Washington, D. C., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

The defendant, Harold W. Danser, Jr., was found guilty on three counts of an indictment[1] charging him with violations of Sec. 17(a) of the Securities Act of 1933, 15 U.S.C.A. § 77q(a). Judgment was entered on December 1, 1959 and defendant was sentenced on each count to pay a fine of $5,000 and be imprisoned for one year. The execution of the prison sentence was suspended and defendant was placed on probation for the period of two years. The prison sentences and probation periods on each of three counts were to run concurrently. The defendant appeals from said judgment.

Each of these 3 counts charged the defendant with wilfully and unlawfully employing a scheme to defraud in the offer and sale of securities of Ultrasonic Corporation and using the mails directly or indirectly in connection with this scheme. Count 3, as limited by the district court,[2] charged that the defendant caused to be made and furnished to investors a prospectus which contained untrue statements of material facts[3] which the defendant knew to be false and intended to be used to defraud. Counts 10 and 17 as limited by the district court charged that the defendant employed a scheme to defraud in that he omitted to state material facts which, in the light of the circumstances, he well knew were necessary to make the information furnished to investors not misleading and that by such omissions the defendant intended to defraud purchasers. These material facts were losses suffered by Ultrasonic in the period subsequent to that covered by the prospectus. Each of the counts charged a specific use of the mails.

Defendant contends that there was insufficient evidence to permit findings (1) that various financial statements as of March 31, 1954 contained in the prospectus were false; (2) that the defendant knew of the falsity of these statements; (3) that the defendant knew of losses in the period March 31, 1954 to July 1, 1954; (4) that the defendant used the mails in violation of Section 17 (a) (1), and accordingly that the district court erred in refusing to grant defendant's motions for judgment of acquittal. The defendant also contends that he had no duty to disclose losses occurring after March 31, 1954 and that the district court erred in denying motions for judgment of acquittal on counts 10 and 17

1. The indictment contained 19 counts and was brought against Harold W. Danser, Jr. and Ultrasonic Corporation of which Danser was President and Director. Ultrasonic Corporation plead nolo contendere to each count and was fined a total of $25,000. The only counts submitted to the jury on the question of the guilt of Danser were Counts 3, 10 and 17, the other counts having been dismissed by the court.

2. The district court limited the 3 counts of the indictment submitted to the jury in order to simplify the issues to be considered by the jury. The charge was clear, concise and fair. It enhanced the effectiveness of jury determination of an otherwise complicated case and merits our commendation.

3. The statements allowed by the district court to be considered by the jury on the question of truth or falsity were:

"(1) That the 'costs other than selling, general and administrative expenses for the six months ended March 31, 1954 were $1,803,564' and in computing so much of that figure as covered the Monitor Division the calculation was made as stated on page 19 of the prospectus 'at percentages of selling prices determined on the basis of past experience.'

"(2) That the net income for the six months ended March 31, 1954 was $49,715.

"(3) That the amount to be amortized as moving expenses as at March 31, 1954 amounted to $114,975."

based on fraud by omission to disclose such losses.[4]

The evidence of the accounting procedures utilized by Ultrasonic in preparing its prospectus, and of alternative figures carried elsewhere in the company's books was complicated. We have studied the record and have considered it in relation to defendant's contention that there was insufficient evidence to permit findings of false statements in the prospectus. We are satisfied that the record contains sufficient evidence to permit such findings. Although we do not intend to spell out in this opinion all of the evidence the record contains on the question of the falsity of the statements in the prospectus, it is perhaps well to mention some of the evidence, which, in our opinion, is sufficient to permit a finding that false statements were made in the prospectus.

The first of the statements that the district court allowed the jury to consider on the question of false information in the prospectus was that the "costs other than selling, general and administrative expenses for the six months ended March 31, 1954 were $1,803,564" and in computing so much of that figure as covered the Monitor Division of Ultrasonic the calculation was made as stated in the prospectus "at percentages of selling prices determined on the basis of past experience." The record contains evidence that a cost system which had been instituted in the Monitor Division showed greater cost of goods sold than the amount shown by the books to have been utilized in making the financial statement in the prospectus. There was also testimony that this cost system was reliable for the purpose of indicating the cost of goods. There was testimony that the percentage of sales utilized in determining estimated cost of goods sold was determined with the intention of reaching a predetermined rate of profit, and that after a percentage was selected, an adjustment was made to achieve the predetermined profit rate and was carried into the financial statement in the prospectus. There was also testimony that the period which nearest reflected the selected percentage indicated in the work sheet was a 10 month period ending more than a year previous, and that the proper accounting procedure would be to take the actual percentage of the most recent period. This evidence, in our opinion, was sufficient to support a finding of the falsity of the statement in regard to cost of goods sold made in the prospectus.

In regard to the falsity of profit stated for the six months ending March 31, 1954 in the prospectus, there was testimony that an increase in the total of the cost of goods sold would decrease the profit. This, together with the evidence that the proper cost of goods was larger than that stated in the prospectus, would tend to prove that the statement of income also was false. In addition, there was testimony that on certain contract projects, a profit corresponding to that expected at the time of bidding was recorded although the expenditures for the project exceeded the contract price; also that an adjustment was made to reduce costs by treating engineering costs as an asset to be recovered from future contracts although the services were not applicable to the future contracts, and another adjustment to show additional profit from one project without considering other similar operations which were losses. This evidence was certainly sufficient to permit a finding that the statement of profit for the six months period was false.

The third statement was in regard to amortized moving expenses. There was evidence that tickets were made for direct labor of employees who worked in moving. As to other items included in the account there was no such supporting material. There was also testimony that the entries which went into the amortized account were not correct or sound representations of the financial status of Ultrasonic. There was some testimony

---

4. The questions relating to admissibility of evidence and refusal to grant a new trial were briefed but were waived by the defendant on oral argument.

that the amount of indirect labor of the Monitor Division allocated to the costs of moving was reasonable. This question of the falsity of the amortized moving cost is, on the record, largely one of credibility, and there was sufficient evidence to permit the jury to find that the figure was false.

Defendant's second contention is that there is insufficient evidence in the record to permit a finding that defendant knew of the falsity of the financial statements in the prospectus. Much of the evidence on this point is circumstantial:[5] (1) knowledge on the part of other company executives of the grave financial situation and of the falsity of the statements in the prospectus, (2) the close dealings of the defendant with various company executives including the financial vice-president, and (3) reporting to the defendant of various operational losses on individual projects. There is testimony by the defendant before the grand jury of general discussions at which defendant was present of the cost system, of use of a percentage as a cost estimate, and of the treatment of moving expenses. There is also a letter from one of the company executives, William Pease, to the defendant setting forth his appraisal of the company's position approximately at the close of the six months period and his recommendations for the company's survival. Defendant in his testimony before the grand jury stated he did not recall discussing with Pease where Pease got his information. In addition to the fact that Pease's letter differed greatly from the statement of the company's financial position made in the prospectus, there were the circumstances that the defendant did not make an investigation of the origin or accuracy of Pease's appraisal and that Ultrasonic did issue securities prior to the next audited statement which was one of the steps recommended by Pease in his letter. This evidence, we believe, is sufficient to permit

a finding by the jury of defendant's knowledge of the falsity of the financial statements in the prospectus.

Defendant further contends that the evidence in the record is insufficient to permit a finding that he knew of losses between March 31, 1954 and July 1, 1954 when he caused the prospectus to be delivered by mail about July 23, 1954. On this point again the evidence of defendant's knowledge is circumstantial. There is evidence in the record that a divisional profit and loss statement for May, 1954 showed losses of $45,000,[6] and that this statement was made and distributed to the divisional managers and the financial vice-president at least by early July. There is the testimony of the close working relation of these executives with the defendant, as well as testimony that defendant attended some meetings of the divisional managers, and that profit and loss statements were presented at some meetings. In addition there is also evidence that a May-June profit and loss statement was prepared which showed a cumulative loss of $485,805, and that this was distributed to the divisional managers and the financial vice-president sometime between July 16 and the first part of August. We believe that this evidence does permit a finding that defendant knew of losses subsequent to March 31, 1954 when he caused the mailing of the prospectus to Clayton Securities Corporation.

The defendant contends that to permit a finding of knowledge on the part of the defendant on the basis of circumstantial evidence, such evidence must offer no other reasonable hypothesis than defendant's knowledge. However, the Supreme Court in Holland v. United States, 1954, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 said:

"Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may

---

5. The defendant did not testify at the trial.

6. This was almost sufficient to wipe out the net profits stated in the prospectus for the six months period ending March 31, 1954.

in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."

Defendant contends that as to the mailings charged in Counts 3 and 10, there is not sufficient evidence to permit a finding that defendant used the mails in violation of the statute.

■ Defendant contends as to Count 3 that the sale by Ultrasonic was to A. C. Allyn & Co. and that the sale agreement did not require A. C. Allyn & Co. to sell to anyone else, therefore any mailing in connection with such resales cannot be charged criminally to defendant. However, we agree with the case of Price v. United States, 5 Cir., 1953, 200 F.2d 652 that Section 17(a) is at least as broad as the mail fraud statute, 18 U.S.C. § 1341 (1958). Under the mail fraud statute as interpreted by the Supreme Court, it is sufficient if "one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." Pereira v. United States, 1954, 347 U.S. 1, 8–9, 74 S.Ct. 358, 363, 98 L. Ed. 435. In the instant case there was testimony by the defendant before the grand jury that he had worked for a securities broker and was familiar with resales by underwriters. There was also testimony that underwriters buy securities at one price and then resell at a profit. This is sufficient, we believe, to dispose of this contention that there was not sufficient evidence of a use of the mails in violation of the statute.

■ As to Count 3 the defendant also contends that since the sale transaction with which this mailing was connected was prior to the sale of the stock to A. C. Allyn & Co. there could be no foreseeability as to this use of the mails. We do not believe that the statute requires a foreseeability of the specific manner of the use of the mails, and regard this contention as without merit.

Defendant further contends that the testimony of Charles Comstock Clayton was hopelessly confused and could not serve as adequate basis for submitting Count 10 to the jury. It is clear that Mr. Clayton was interrogated concerning his reading of a prospectus prior to Clayton Securities Corporation becoming one of the underwriters. However, on cross-examination Mr. Clayton clearly stated that it was the prospectus dated July 21, 1954 that was delivered to Clayton Securities Corporation by mail. There clearly was sufficient evidence to permit a finding of use of the mails in violation of the statute. His testimony as clarified on cross-examination is support for a finding that the use of the mails was not merely in connection with a preliminary negotiation.

Defendant contends as to Counts 10 and 17 that there was no duty on defendant to disclose losses occurring after March 31, 1954. Defendant argues that the statements in the prospectus speak only as of March 31, and that investors are bound to take some risk as to operations subsequent to the effective date of the statement. Defendant further argues that Ultrasonic was free to use the prospectus for a certain period without furnishing supplementary information, and that the period was not exceeded in the instant case.

■ However, we believe that this contention misses the vital point that defendant may not use the prospectus as part of a scheme to defraud, no matter how recent the prospectus information is, without violating Section 17(a). This section does not require disclosure at any certain point although disclosure would eliminate the possibility of a scheme to defraud. Rather the section bars the use of the mails in connection with a scheme to defraud. In the circumstances of the

instant case, it merely happens that a primary element of the fraud scheme under Counts 10 and 17 as given to the jury is the concealment of losses known to the defendant. See Speed v. Transamerica Corp., D.C.Del.1951, 99 F.Supp. 808, at page 829, affirmed 3 Cir., 1956, 235 F.2d 369; Loss, Securities Regulation 183 (1951). The evidence is sufficient to support a finding that there was a scheme to defraud through concealment of the losses.

Judgment will be entered affirming the judgment of the district court.